UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK ROESEL, *et al.* | ) | CASE NO. 5:23-CV-01584 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| DAM MANAGEMENT LLC d/b/a LANNING'S | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MOTION FOR COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS OR, IN THE ALTERNATIVE, FOR EXPEDITED DISCOVERY

Plaintiffs Mark Roesel and Jerry Hernandez ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully move, pursuant to 29 U.S.C. § 216(b) and Ohio Revised Code 4111.14(K), this Court to find that there is a strong likelihood that Plaintiffs and the potential opt-in plaintiffs are substantially similar and facilitate notice of the lawsuit to potential opt-in plaintiffs by approving the "Notice of Collective Action Lawsuit" (attached hereto as Exhibit A), authorizing Plaintiffs to deliver it to the individuals on the list of potential opt-in plaintiffs, and requiring Defendant to provide to Plaintiffs (1) the names of all individuals employed by DAM Management LLC d/b/a Lanning's for any period of time since August 14, 2020 who were subject to a 5% fee for credit card tips or were paid less than $4.35 per hour in 2020, $4.40 in 2021, $4.65 in 2022, and $5.05 in 2023, for any week of work, (2) their contact information, including last-known home addresses (including zip code), home and mobile telephone numbers, and e-mail addresses, and (3) their dates of employment.

If this Court denies Plaintiffs' Motion to facilitate notice of the lawsuit, then Plaintiffs request that this Court permit expedited discovery to allow Plaintiffs an opportunity to show,

through additional discovery, that there is a strong likelihood that potential opt-plaintiffs are similarly situated to Plaintiffs.

In this lawsuit, Plaintiffs contend that Defendant did not pay its tipped employees minimum wage for at least two reasons: (1) because Defendant paid less than the Ohio tipped-employee minimum wage on the face of the pay stubs themselves for certain weeks, and (2) because Defendant required its tipped employees, including servers, bartenders, and bussers, to partake in an illegal tip pool by charging these employees 5% of any credit card tips that they received. Compl. ¶¶ 6-8. For either or both of these alleged violations, Plaintiffs filed this lawsuit, alleging that Defendant has failed to pay Plaintiffs and similarly situated employees at least minimum wage for all hours that they worked for Defendant.

Plaintiffs seek a collective action class of all individuals employed by DAM Management LLC d/b/a Lanning's for any period of time since August 14, 2020 who (1) were subject to a 5% fee for credit card tips or (2) were paid less than $4.35 per hour in 2020, $4.40 in 2021, $4.65 in 2022, and $5.05 in 2023, for any week of work.

I.  STATEMENT OF FACTS

Roesel worked for Defendant from about December 2020 to about February 2022. Roesel Decl. ¶ 2 (attached hereto as Exhibit B). Hernandez worked for Defendant from about December 2020 to June 2022, and at the restaurant under different ownership starting in 1997. Hernandez Decl. ¶ 2 (attached hereto as Exhibit C). Defendant paid Plaintiffs $4.35 per hour from January 2021 to about June 2021. Roesel Decl. ¶ 4; Hernandez Decl. ¶ 4. The period of May 17, 2021 to about May 30, 2021 is one example of this, where Defendant paid Roesel only $4.35 per hour. Paystub attached as Ex. 1 to Roesel Decl. The Ohio tipped-employee minimum wage in 2021 was $4.40 per hour. *See* Minimum Wage Posters, Ohio.gov Department of Commerce (April 16, 2021)

(last visited October 27, 2023), https://com.ohio.gov/divisions-and-programs/industrial-compliance/wage-and-hour/guides-and-resources/minimum-wage-posters. Likewise, during this same May 17, 2021, to May 30, 2021 pay period, Defendant also paid Hernandez only $4.35 per hour. Paystub attached as Ex. 1 to Hernandez Decl. In addition to the January 2021 to June 2021 time period, there were also other weeks in which Defendant paid Plaintiffs less than the applicable Ohio tipped-employee minimum wage. Roesel Decl. ¶ 5; Hernandez Decl. ¶ 5.

Defendant charged Plaintiffs 5% of all credit card tips that they received. Roesel Decl. ¶ 6; Hernandez Decl. ¶ 6. Defendant told Plaintiffs that the 5% charge on all credit card tips that they received went to "the house." Roesel Decl. ¶ 7; Hernandez Decl. ¶ 7. Plaintiffs were told that the 5% charge was to pay for employee meals. Roesel Decl. ¶ 8. Hernandez Decl. ¶ 8. Plaintiffs were charged 5% of all credit card tips regardless of whether they took an employee meal. Roesel Decl. ¶ 11; Hernandez Decl. ¶ 11.

## II. PLAINTIFFS AND THE POTENTIAL OPT-IN PLAINTIFFS ARE SUBSTANTIALLY SIMILAR

The Sixth Circuit has recently announced a new controlling standard for determining whether a Court should facilitate notice of a lawsuit to potential opt-in plaintiffs in a Collective Action, replacing the previously often utilized two-stage conditional certification process. *See Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023).

"A district court must first determine whether notice of the action should be sent to potential opt-in plaintiffs." *Gifford v. Northwood Healthcare*, 2023 WL 5352509 (S.D. Ohio 2023), citing *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). To determine whether notice of a collective action should be sent to potential opt-in plaintiffs, the Sixth Circuit has instructed courts to consider whether there is a strong likelihood that any potential opt-in plaintiffs are similarly situated to Plaintiffs. *Clark*, at 1011. "That standard requires a

3

showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Clark*, at 1011. Here, Plaintiffs and the potential opt-in plaintiffs in this matter are similarly situated, because Defendant's Answer explicitly states that Defendant "charged a 5% fee for credit card tips," because Defendant itself has produced paystubs showing that it paid servers less than the applicable tipped-employee minimum wage for certain weeks, and because Plaintiffs and the potential opt-in plaintiffs are unified by two common theories of FLSA-violating policies.

"Plaintiffs are similarly situated when their claims are 'unified by common theories of defendants' statutory violations,' such as 'a single, FLSA-violating policy.'" *Gifford v. Northwood Healthcare*, 2023 WL 5352509 (S.D. Ohio 2023) (citations omitted). This is precisely the situation in this lawsuit, except that Plaintiffs have two separate theories of FLSA-violating policies, rather than just one. Indeed, Plaintiffs are even more similarly situated than would be required to facilitate notice of the lawsuit: "A named plaintiff must show that her position is similar to that of opt-ins, but they need not be identical." *Id*. citing *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.).

Plaintiffs seek a collective action class of all individuals employed by DAM Management LLC d/b/a Lanning's for any period of time since August 14, 2020 who (1) were subject to a 5% fee for credit card tips or (2) were paid less than $4.35 per hour in 2020, $4.40 in 2021, $4.65 in 2022, and $5.05 in 2023, for any week of work. Plaintiffs contend that these policies applied across-the-board to all tipped employees of Defendant. Regardless, these proposed collective action classes are based on common theories of statutory violations. Plaintiffs and the proposed opt-in plaintiffs were subjected to identical alleged minimum wage violations. Given that Defendant's Answer does not deny the 5% fee for credit card tips, given that paystubs produced

by Defendant itself show payments below the applicable tipped-minimum wage, and given the way the proposed collective action class is defined, there is not just an extremely strong likelihood, but rather a certainty, that these policies applied both to Plaintiffs and to potential opt-in plaintiffs.

Because, at the very least, there is a strong likelihood that Plaintiffs are similarly situated to the potential opt-in plaintiffs, Plaintiffs request that the Court facilitate notice of this lawsuit to potential opt-in plaintiffs.

### III. IF THIS COURT FINDS THAT PLAINTIFFS HAVE NOT YET SHOWN A STRONG LIKELIHOOD THAT POTENTIAL OPT-IN PLAINTIFFS ARE SIMILARLY SITUATED, THEN IT SHOULD GRANT EXPEDITED DISCOVERY ON THIS ISSUE

If this Court finds that Plaintiffs have not yet demonstrated a strong likelihood that potential opt-in Plaintiffs are similarly situated, then Plaintiffs request that this Court grant expedited discovery on the issue of whether there are similarly situated potential opt-in plaintiffs. Since this Court has not yet permitted formal discovery, Plaintiffs have been limited in the evidence that they may collect to show a strong likelihood that Plaintiffs and the potential opt-in plaintiffs are similarly situated. "[T]he Sixth Circuit recently [and] dramatically changed the legal standard governing the issuance [*13] of notice of a [FLSA] suit." *Doe v. Coliseum, Inc.*, No. 2:20-CV-10845-TGB-MJH, 2023 U.S. Dist. LEXIS 177057, at *12-13 (E.D. Mich. Sep. 30, 2023). "As a consequence, this Circuit's district courts are adapting their jurisprudence so as to best implement the new *Clark* standard." *Id*. "Therefore . . . a period of expedited discovery, during which either party may gather evidence and information that the party reasonably believes is relevant to the 'similarly situated' inquiry, would be appropriate." *Id*. at *13.

Importantly, the Sixth Circuit has instructed Courts to make this similarly situated determination quickly. "In applying this standard, district courts should expedite their decision to the extent practicable. . . . If the plaintiffs in an FLSA suit move for court-approved notice to other

5

employees, the court should waste no time in adjudicating the motion. To that end, a district court may promptly initiate discovery relevant to the motion, including if necessary by 'court order.'" *Clark*, at 1011 (6th Cir. 2023) (citing Fed. R. Civ. P. 26(d)(1)). "[O]nce [a collective] action is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Gifford v. Northwood Healthcare*, 2023 WL 5352509 (S.D. Ohio 2023) citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-171 (1989).

IV. **THIS COURT SHOULD REQUIRE DEFENDANTS TO PROVIDE PLAINTIFF WITH A LIST OF ALL POTENTIAL OPT-IN PLAINTIFFS AND THEIR CONTACT INFORMATION AND APPROVE PLAINTIFFS' PROPOSED OPT-IN NOTICE**

This Court should order Defendant to provide a list of all potential opt-in collective action members and their contact information, including last-known home addresses (including zip code), home and mobile telephone numbers, and e-mail addresses. This Court should also require Defendant to identify the dates of employment for these individuals. This list is necessary for Plaintiffs to send a notice to those individuals so that they may decide whether to join this proposed collective action. Plaintiffs need this list in order to contact the potential opt in plaintiffs in the most expeditious manner possible and for potential opt-in plaintiffs to have sufficient time to be notified of the present collective action and the opportunity to consider whether they would like to participate as party plaintiffs.

Furthermore, this Court should approve the attached "Notice of Collective Action Lawsuit" and authorize Plaintiffs to send it to the individuals on the lists provided by Defendant. A court "may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Because

the attached notice fairly addresses the issues in this case and explains the procedures for opting into this action, this Court should approve it and authorize its delivery.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court find that there is a strong likelihood that Plaintiffs and the potential opt-in plaintiffs are substantially similar and facilitate notice of the lawsuit to potential opt-in plaintiffs by approving the "Notice of Collective Action Lawsuit" (attached hereto as Exhibit A), authorizing Plaintiffs to deliver it to the individuals on the list of potential opt-in plaintiffs, and requiring Defendant to provide to Plaintiffs (1) the names of all individuals employed by DAM Management LLC d/b/a Lanning's for any period of time since August 14, 2020 who were subject to a 5% fee for credit card tips or were paid less than $4.35 per hour in 2020, $4.40 in 2021, $4.65 in 2022, and $5.05 in 2023, for any week of work, (2) their contact information, including last-known home addresses (including zip code), home and mobile telephone numbers, and e-mail addresses, and (3) their dates of employment.

Respectfully submitted,

/s/ Christopher M. Sams
Stephan I. Voudris, Esq.
Supreme Court No. 0055795
Christopher M. Sams, Esq.
Supreme Court No. 0093713
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
svoudris@voudrislaw.com
csams@voudrislaw.com
440-543-0670
440-543-0721 (fax)
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October, 2023, a true and correct copy of this document was served by this Court's Electronic Filing System, which will serve notice upon counsel for Defendant.

/s/ Christopher M. Sams