UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARK ROESEL, et al., ) | CASE NO: 5:23-cv-01584 |
| Plaintiff, ) | JUDGE JOHN ADAMS |
| v. ) | **MEMORANDUM OF OPINION AND ORDER** |
| DAM Management, LLC, ) d/b/a LANNING'S. ) | |
| ) | **(Resolves Doc. 20, 21, 27, 36)** |
| Defendant. ) | |

Pending before the Court are the parties' cross motions for summary judgment. Docs. 20, 21. Upon review, the Court DENIES Defendant DAM Management, d/b/a Lanning's ("Lanning's" or Defendant) motion for summary judgment (Doc. 21), and GRANTS Plaintiffs Mark Roesel and Jerry Hernandez' partial motion for summary judgment (Doc. 20). Further pending is Defendant's motion to deem certain admissions admitted, which is DENIED. Doc. 27. Finally, Defendant's supplemental motion[1] for summary judgment is DENIED. Doc. 36.

---

[1] Defendant DAM Management brough a defamation action against Plaintiff Hernandez in Summit County Court. *DAM Management, LLC v. Hernandez*, CV-2022-07-2240. In its supplemental motion for summary judgment herein, Doc. 36, Defendant asserts that "the law of res judicata and Ohio Civ. R. 13(A) required Plaintiff Hernandez to assert the claims in this lawsuit as a counterclaim in the Summit County lawsuit." Doc. 36, p. 2. The Court notes that the state court action was filed in July of 2022. The federal action was brought in August of 2023. .The parties have conducted discovery, briefed dispositive motions, and expended time and money litigating the case. Defendant filed its supplementary motion four months after dispositive motion briefing was complete. Defendant declined to raise an abstention argument in a timely manner such that this Court could have conserved judicial and financial resources, instead waiting until the time to appeal the state court case had run and significant time and effort had been expended by the parties and the Court. Substantively, the Court concludes that Plaintiff's FLSA and Ohio minimum wage claims were not compulsory counterclaims in Defendant's defamation action against Hernandez. The state court case involved actions of one former employee after his employment ended. The Federal case involves Defendant's conduct as an employer, is a potential collective action, and includes Plaintiff Roesel, who was in no way related to the state court case. Accordingly, the motion is denied.

1

I.      FACTS

The relevant facts necessary to rule on the parties' motions are simple and undisputed. Defendant purchased Lanning's, a restaurant in Bath, Ohio in December of 2020. Doc. 21-2, p. 9. Defendant retained the previous owner's practices and policies, including those related to wages and compensation, and maintained most of the staff, including Plaintiffs. Doc. 21-2, p. 18-19, Doc. 21-3, p. 13.

Plaintiff Hernandez was a server at Lanning's for approximately 27 years, until June of 2022. Doc. 21-3, p. 13, 9. Plaintiff Hernandez worked approximately 20-25 hours a week. Doc. 21-3, p. 19. Plaintiff Roesel was a server at Lanning's from September of 2019 to February of 2022. Doc. 21-4, p. 43.  Plaintiff Roesel worked approximately 24-30 hours a week. Doc. 21-4, p. 37-38. Plaintiffs were paid an hourly rate plus tips.  Doc. 21-4, p. 17; Doc. 21-3, p. 18.; Doc. 21-2, p. Defendant paid its servers $4.35 from December 2020-June of 2021, $4.40 from June of 2021 to November of 2021, and $6.00 from December of 2021-present.  Doc. 21-2, p. 15. Doc. 21-4, p. 32; Doc. 21-3, p. 18-19.

Defendant accepts credit card payments.  Doc. 21-2, p. 17. Credit card companies charge Defendant processing fees. Id. Each time a customer uses a credit card to pay their bill, Defendant is charged fees as follows:

- MasterCard: $.15 per authorization item; 2.38% gross amount;
- Visa: $.15 per authorization item; 2.33% gross amount;
- American Express: $.15 per authorization item; 3.5% of gross amount; and
- Discovery - $.15 per authorization item; 2.41% of gross amount.

Doc. 21-2, Ex. 4, p. 11.

2

To recoup some of these fees, Defendant withheld five percent of tips that its customers paid their servers via credit card. Doc. 21-2, 28-31; Doc. 21-3, p. 18; Doc. 21-4, p. 34. Defendant did not withhold any fees from cash tips. Doc. 21-4, p. 18-19; Doc. 21-3, p. 20.

Plaintiffs filed the instant Complaint, asserting violations of Ohio's minimum wage laws and the Fair Labor Standards Act.

## II. LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law * * *.

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943–944 (6th Cir. 1990).

A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–1480 (6th Cir. 1989) (citing *Frito–Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

The burden of production for the movant is to identify which portions of the evidence "demonstrate the absence of a genuine issue of material fact" regarding an essential element or, alternatively, to demonstrate a showing that there is "literally no evidence in the record" in support of an essential element of the other party's initial claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 332 (1986). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. LAW AND ANALYSIS

#### A. Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act- Minimum Wage Requirements

Plaintiffs assert that Defendant violated the minimum wage requirements in the Fair Labor Standards Act (FLSA), 29 U.S.C. §206 and in Section 34a, Article II of the Ohio Constitution, Ohio Revised Code Section 4111.14 ("the Ohio Act").

At the outset, the Court notes that "FLSA and Ohio Minimum Fair Wage Standards Act claims are subject to same standards and may be analyzed concurrently." *Craig v. Landry's, Inc.*, 2016 U.S. Dist. LEXIS 80489, *8 (S.D. Ohio 2016) (citing *Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp.2d 725, 732 (S.D. Ohio 2006)); *Pritchard v. Dent Wizard Int'l. Corp.*, 210 F.R.D. 591, 596 (S.D. Ohio 2002); *Haight v. Minchak*, 58 N.E.3d 1135, 146 Ohio St. 3d 481, 2016-Ohio-1053, 2016 WL 1061737, at *4 (Ohio 2016) ("The Fair Minimum Wage Amendment incorporates the FLSA without any limitation.").

The FLSA requires that employers pay at least $7.25 per hour to their employees. 29 U.S.C. § 206(a)(1)(C). The Ohio Act sets a separate minimum wage, which changes each year in accordance with inflation. *See* Ohio Const. Article II, § 34a. In 2019, Ohio's minimum wage was $8.55; $8.70 in 2020; $8.80 in 2021; $9.30 in 2022; $10.10 in 2023; $10.45 in 2024. Minimum Wage Posters, Ohio.gov Department of Commerce (April 16, 2021) (last visited September 3, 2024), https://com.ohio.gov/divisions-and-programs/industrial-compliance/wage-and-hour/guides-andresources/minimum-wage-posters. Because Ohio's minimum wage is higher than the FLSA wage, Ohio's minimum wage is applicable herein. 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

### B. The "Tip Credit"

Both the FLSA and the Ohio Act permit employers to pay "tipped employees" less than the minimum wage so long as the tips, when combined with the hourly wage paid by the employer at least equals minimum wage. 29 U.S.C. § 203(m), (t); OHIO CONST. art. II, § 34a; *Landry's, Inc.*, at *1-2 The FLSA defines "tipped employees" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(m), (t). This exception is referred to as a "tip credit." *Toro v. Calimira* LLC, 2024 U.S. Dist. LEXIS 2753, *3-4 (S.D. Ohio Jan.5, 2024) (citing *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 615 (9th Cir. 2018)). An employer may pay tipped employees as low as $2.13 an hour. Id.

Plaintiffs argue that Defendant failed to pay them the minimum wage in compliance with the tip credit. This Court agrees that Defendant failed to comply with the minimum wage

5

requirements under the FLSA and the Ohio Act. As set forth below, because Defendant improperly withheld a portion of Plaintiffs' tips, the tip credit does not apply, and therefore Defendant was required to pay Ohio's minimum wage of $8.70 in 2020; $8.80 in 2021; $9.30 in 2022.

### C. Perquisite to Application of the Tip Credit

Plaintiffs worked as servers for Defendant, and there is no dispute that Plaintiffs were tipped employees. However, this fact alone does not guarantee application of the "tip credit" for purposes of minimum wage. To take advantage of the tip credit, an employer must meet the specific requirements under the FLSA. "Congress intended that, with the exception of tip pooling, a tipped employee must be permitted to retain all of his or her gratuities as a prerequisite to the employer's invocation of the statutory tip credit[.]" *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 553 (citing 29 U.S.C. § 203(m)).

Here, Plaintiffs argue that Defendant unlawfully withheld a portion of their tips to reimburse itself for credit card processing fees. Doc. 20, p. 6. By so withholding, Plaintiff asserts, Defendant was not entitled to invoke the tip credit. Doc. 29, p. 8. The Court agrees.

The facts surrounding Plaintiffs' pay are not in dispute. Defendant, relying on the tip credit, paid Plaintiffs $4.35 from December 2020-June of 2021, $4.40 from June of 2021 to November of 2021, and $6.00 from December of 2021-present. Doc. 21-2, p. 15. Doc. 21-4, p. 32; Doc. 21-3, p. 18-19. Further, Defendant systematically withheld 5% of Plaintiffs' credit card tips.[2] Doc. 20, p. 6-7; Doc. 22, p. 14. At issue is whether this 5% withholding is lawful.

---

[2] Defendant confirms that this 5% fee was withheld "solely to recoup a small portion of the credit card processing fees paid by Defendant to the credit card merchants. Defendant does not deduct a similar processing fee for cash tips." Doc. 21-1, p. 4. Thus, Defendant cannot justifiably

6

In a situation where a customer pays a tip with a credit card, and the credit card company assesses a service charge to process the tip, the FLSA allows employers to deduct any funds required to "convert" a credit card tip into a "cash tip" "so long as the recoupment reasonably approximates the cost of collecting the credit card tips." *Landry's, Inc.*, at *1-2 (citing *Myers,* 192 F.3d at 553-554).

> Congress patently did not intend that the tipped employee should ever receive more than that amount. Before an employee can be entitled to attain any funds on account of a charged customer gratuity, that debited obligation must be converted into cash. The liquidation of the restaurant patron's paper debt to the table server required the predicate payment of a handling fee to the credit card issuer.
>
> Accordingly, the employee could only have been entitled to receive the cash proceeds of the charged tip net of liquidation expenses. Nothing in the FLSA evidenced a Congressional intent to compel employers to contribute anything to any customer's tip, including any funds required to "cash out" a charged tip for the benefit of the employee. See 29 C.F.R. § 531.52 (defining a "tip" to consist, inter alia, of money gifted by a customer in recognition of service which is received by the employee free of any control by the employer); §531.53 (explaining that tips may include "amounts transferred by the employer to the employee pursuant to directions from credit customers who designate amounts to be added to their bills as tips."). Reading sections 531.52 and 531.53 together, it is clear that a charged gratuity becomes a "tip" only after the employer has liquidated it and transferred the proceeds to the tipped employee; prior to that transfer, the employer has an obvious legal right to deduct the cost of converting the credited tip to cash.

*Myers v. Copper Cellar Corp.*, 192 F.3d 546, 553-554.

Plaintiffs concede that Defendant was entitled to withhold a portion of their tips to offset the credit card processing fees. Rather, Plaintiff asserts that by withholding 5%, Defendant withheld "significantly more" than the fees. Doc. 20, p. 7. There is no dispute that Defendant was charged the following fees from various credit card companies:

- MasterCard: $.15 per authorization item; 2.38% gross amount;

---

present any argument that the withholding was for any other allowable purpose, such as tip pooling.

7

- Visa: $.15 per authorization item; 2.33% gross amount;
- American Express: $.15 per authorization item; 3.5% of gross amount; and
- Discovery - $.15 per authorization item; 2.41% of gross amount.

Doc. 21-2, Ex. 4, p. 11. Accordingly, there is no dispute that Defendant is withholding a higher percentage than it is being charged. Defendant contends that 5% "is reasonable and is a reasonable approximation of the processing fee charged to Defendant." Doc. 22 p. 14. The Department of Labor "has long construed the FLSA to permit the employer's reduction of an employee's charged tip by the amount of a service toll associated with settlement of that debited perquisite." *Myers,* 192 F.3d at 553-554. By way of illustration, the Department of Labor explains the following in its official field manual:

> Where tips are charged on credit cards, WH [the Wage and Hour Division] will not question the reduction of the credit card tips paid over to the employee if the amount deducted is no greater than the percentage charged by the credit card company. For example, where a credit card company charges an employer 5 percent on all sales charged to its credit service, the employer may pay the employee 95 percent of the tips without violating FLSA.

*Myers,* 192 F.3d at 553-554 (quoting U.S. Dept. of Labor Field Operations Handbook § 30d05(a) (Dec. 9, 1988)).

Upon review of the issue, Courts have concluded that a credit card tip withholding fee is not invalid merely because it exceeds the credit card processing fee charged by one or even a few companies, so long as the employer can prove that over a specified period of time, it has not withheld more than the total expenditures associated with the credit card collection.

> However, this forum rejects the proposition that, to avoid invalidation of the tip credit, an employer's deduction from an employee's credit card tip may not, under any circumstances, exceed the actual service charge imposed by the credit service provider with respect to the specific charged gratuity at issue. To the contrary, this court concludes that the employer may, consistent with the letter and spirit of the FLSA, withhold a standard composite percentage from each credit card tip, even if, as a consequence, some deductions will exceed the expense

8

>  actually incurred in collecting the subject gratuity, as long as the employer proves by a preponderance of evidence that, in the aggregate, the amounts collected from its employees, over a definable time period, have reasonably reimbursed it for no more than its total expenditures associated with credit card tip collections. Stated differently, the employer must prove that its total deductions from employees' tip incomes did not enrich it, but instead, at most, merely restored it to the approximate financial posture it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant period. See Herman v. Collis Foods, Inc., 176 F.3d 912, 918 (1999) (recognizing "the FLSA's policy of preventing employers from exploiting § 203(m) deductions for profit.").

*Myers*, 192 F.3d at 554-55.

Defendant makes no effort, in either its Opposition to Plaintiff's motion for summary judgment or in its own Motion for Summary Judgment, to point to any evidence that, in the aggregate, it withheld no more than its total expenditures associated with its credit card tip collection. The undisputed evidence before this Court establishes that Defendant is impermissibly withholding more than necessary to convert Plaintiffs' tips from credit to cash. Defendant is charged fees ranging from 2.33% to 3.5% by various credit card companies. Simple math establishes that a blanket 5% withholding is substantially more than 3.5%.

If a customer's total bill is $100 including a $20 tip via credit card, the most Defendant is charged is $3.50 (3.5%) plus a $.15 per transaction fee, for a total of $3.65. As to the tipped portion, Defendant is charged .70$ (3.5% of $20). Defendant withholds 5% from the tipped portion for a total of $1. Thus, Defendant is enriched by $.30. Accordingly, Defendant is impermissibly withholding its employees' tips and is therefore not entitled to the "tip credit" for purposes of minimum wage.

It is undisputed that Defendant paid its employees $4.35 from December 2020 to June of 2021, $4.40 from June of 2021 to November of 2021, and $6.00 from December of 2021-present. This is well under minimum wage per the Ohio Act ($8.70 in 2020; $8.80 in 2021; $9.30 in 2022;

$10.10 in 2023; $10.45 in 2024) and the FLSA. Accordingly, Plaintiffs' motion for partial summary judgment on this issue is GRANTED, and Defendant's motion for summary judgment on this issue is DENIED.

Finally, Defendant asserts that any failure to pay minimum wage is offset by meals it offered Plaintiffs during their shifts. However, Defendant frames this as an argument regarding back pay, and is therefore an issue for the remaining damage portion of this case. Doc. 21, p. 18, citing 29 U.S.C. § 203(m); see also 29 C.F.R. 531.29; *Chao v. Min Fang Yang*, No. 05-2563, 2007 WL 7209596, *5 (W.D. Tenn. Aug. 13, 2007) (citing *Herman v. Collis Foods, Inc.*, 176 F.3d 912, 920 (6th Cir. 1999); *Morgan v. SpeakEasy, LLC*, 625 F.Supp.2d 632, 655 (N.D. Ill. 2007)).

## IV. CONCLUSION

Defendant's motion for summary judgment is DENIED (Doc. 21), and Plaintiff's motion for partial summary judgment is GRANTED (Doc. 20). Defendant's motion to deem certain admissions admitted is DENIED.[3] Doc. 27. Defendant's supplemental motion for summary judgment is DENIED. Doc. 36. This matter is hereby set for a telephonic status conference on October 9, 2024 at 11:30 am regarding the remaining issue of damages.

**IT IS SO ORDERED.**

DATE:  September 12, 2024             /s/ John R. Adams
                                      Judge John R. Adams
                                      UNITED STATES DISTRICT COURT

---

[3]With a fully developed record, the Court declines to review the matter of alleged admissions.