UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK ROESEL, *et al.* | ) | CASE NO. 5:23-CV-01584 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| DAM MANAGEMENT LLC d/b/a | ) | |
| LANNING'S | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' SECOND MOTION FOR COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS

Pursuant to this Court's October 30, 2023 Order permitting the re-filing of Plaintiffs' Motion for Court Authorized Notice to Potential Opt-In Plaintiffs after resolution of the parties dispositive motions, Plaintiffs Mark Roesel and Jerry Hernandez ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully move, pursuant to 29 U.S.C. § 216(b) and Ohio Revised Code 4111.14(K), this Court to find that there is a strong likelihood that Plaintiffs and the potential opt-in plaintiffs are substantially similar and facilitate notice of the lawsuit to potential opt-in plaintiffs by approving the "Notice of Collective Action Lawsuit" (attached hereto as Exhibit A), authorizing Plaintiffs to deliver it to the individuals on the list of potential opt-in plaintiffs, and requiring Defendant to provide to Plaintiffs within ten business days (1) the names of all individuals employed as servers, bartenders, or bussers by DAM Management LLC d/b/a Lanning's for any period of time since August 14, 2020 (2) their contact information, including last-known home addresses (including zip code), home and mobile telephone numbers, and e-mail addresses, and (3) their dates of employment.

In this lawsuit, Plaintiffs contended that Defendant did not pay them minimum wage for at least two reasons: (1) because Defendant charged Plaintiffs 5% of any credit card tips that they received, and (2) because Defendant paid less than the Ohio tipped-employee minimum wage on the face of the pay stubs themselves for certain weeks. This Court has granted Plaintiffs summary judgment on both of these liability issues. Because *all* of Defendant's servers, as well as Defendant's bartenders and bussers, are similarly situated with regard to these violations, Plaintiffs seek a collective action class of servers, bartenders, and bussers employed by DAM Management LLC d/b/a Lanning's for any period of time since August 14, 2020.

## I. STATEMENT OF FACTS

Defendant charged Plaintiffs, and, indeed, all of its servers, a 5% fee for all credit card tips they received:

> Q. . . . So you agree, correct, that Lanning's was taking, and still is, 5 percent from all of the credit card tips that servers receive?
>
> \* \* \*
>
> A. Yes.

Trnka Dep. 17; Order Granting Pls.' Mot. for Partial Summ. J. at 2, Doc. #39, PageID #900-901 ("Defendant withheld five percent of tips that its customers paid their servers via credit card.").

Defendant's credit card processing fees, however, are less than 5%:

> Q. So you agree then that the credit card transaction fees that Lanning's is paying are below 5 percent, right?
> A. Correct.

Trnka Dep. 25-26; Order Granting Pls.' Mot. for Partial Summ. J. at 2, Doc. #39, PageID #900.

Defendant applied the 5% credit card fee to *all* of its servers and bartenders' tips directly, and the 5% credit card fee on the servers' pay impacts the tips that bussers receive and additional tips that bartenders receive from servers, because they earn a percentage of servers' tips:

> Q. Are you still charging a 5 percent fee on the credit card tips that the servers receive
> A. Yes.
> Q. Are you paying bussers the same rate of pay?
> A. Bussers are $6 an hour.
> Q. And they get tips too?
> A. They earn a percentage of the server tips.
>
> \* \* \*
>
> Q. And what are you paying the bartenders?
> A. Bartenders are $6 an hour.
> Q. And they get a percent of server tips?
> A. They get a percentage of server tips.
> Q. Anything else?
> A. They get a percentage of their tips earned on their bar guests.
>
> \* \* \*
>
> A. It's a sliding scale, however.
> Q. Okay. What do you mean by that?
> A. So if a server has a $100 tip, the first 5 percent goes to the house.
> Q. Okay.
> A. Once that is deducted the next 20 percent goes to the bussers. Once that is deducted, the next 10 percent goes to the bartender. So it's not a straight 10 percent of the first $100.
>
> \* \* \*
>
> Q. Okay. I see what you're saying. Do the bartenders pay 5 percent to the house?
> A. Correct. Yes, they do.

Trnka Dep. 10-13.

As of February 2024, Lanning's employed about 60 employees. *Id*. 9. ("Currently, we have about 60, primarily, part-time employees.") Amongst those employees, about 11 were servers, 5 were cooks, 3 or 4 were bartenders, and more than 20 were bussers. *Id*. 10.

Plaintiffs worked for Defendant as servers. *See* Ex. B and Ex. C, Decl. of Roesel and Decl. of Hernandez, to *Plaintiffs' Motion for Court Authorized Notice…*, Doc. #12-2, PageID #126; Doc. #12-4, PageID #129. Defendant paid servers as well as bartenders and bussers $4.35 per hour from January to June 2021:

> A. The rates of pay at the beginning of 2021 was $4.35 . . . .
> Q. . . . Were the bartenders and the bussers also making $4.35 per hour from the beginning of 2021 to June of 2021?

A. Yes.

*Id*. 15; Order Granting Pls.' Mot. for Partial Summ. J. at 2, Doc. #39, PageID #901 ("Defendant paid its servers $4.35 from December 2020-June of 2021.").

## II. PLAINTIFFS AND THE POTENTIAL OPT-IN PLAINTIFFS ARE SUBSTANTIALLY SIMILAR

In 2023, the Sixth Circuit announced a new controlling standard for determining whether a Court should facilitate notice of a lawsuit to potential opt-in plaintiffs in a Collective Action, replacing the previously often utilized two-stage conditional certification process. *See Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023).

"A district court must first determine whether notice of the action should be sent to potential opt-in plaintiffs." *Gifford v. Northwood Healthcare*, 2023 WL 5352509 (S.D. Ohio 2023), citing *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). To determine whether notice of a collective action should be sent to potential opt-in plaintiffs, the Sixth Circuit has instructed courts to consider whether there is a strong likelihood that any potential opt-in plaintiffs are similarly situated to Plaintiffs. *Clark*, at 1011. "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Clark*, at 1011.

Here, Plaintiffs and the potential opt-in plaintiffs in this matter are similarly situated, because (1) Defendant's own admissions and this Court's summary judgment rulings show that servers and bartenders were ***all*** subjected to Defendant's policy of deducting 5% of tips, (2) bussers' tips were a direct result of the servers tips and, therefore, bussers were also impacted by Defendant's policy of deducting 5% of tips, and (3) servers, bartenders, and bussers were all paid less than the tipped employee minimum wage from January 2021 to June 2021.

4

Plaintiffs and the potential opt-in plaintiffs are unified by two common theories of FLSA-violating policies. "Plaintiffs are similarly situated when their claims are 'unified by common theories of defendants' statutory violations,' such as 'a single, FLSA-violating policy.'" *Gifford v. Northwood Healthcare*, 2023 WL 5352509 (S.D. Ohio 2023) (citations omitted). This is precisely the situation in this lawsuit, except that Plaintiffs have two separate theories of FLSA-violating policies, rather than just one. Indeed, Plaintiffs are even more similarly situated than would be required to facilitate notice of the lawsuit: "A named plaintiff must show that her position is similar to that of opt-ins, but they need not be identical." *Id*. citing *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011) (Marbley, J.).

These policies applied across-the-board to all of Defendant's servers, bartenders, and bussers. Plaintiffs and the proposed opt-in plaintiffs were subjected to identical alleged minimum wage violations. There is not just an extremely strong likelihood, but rather a certainty, that these policies applied both to Plaintiffs and to potential opt-in plaintiffs. Plaintiffs, therefore, request that the Court facilitate notice of this lawsuit to potential opt-in plaintiffs.

**III.  THIS COURT SHOULD REQUIRE DEFENDANTS TO PROVIDE PLAINTIFF WITH A LIST OF ALL POTENTIAL OPT-IN PLAINTIFFS AND THEIR CONTACT INFORMATION AND APPROVE PLAINTIFFS' PROPOSED OPT-IN NOTICE**

This Court should order Defendant to provide a list of all potential opt-in collective action members and their contact information, including last-known home addresses (including zip code), home and mobile telephone numbers, and e-mail addresses. This Court should also require Defendant to identify the dates of employment for these individuals. This list is necessary for Plaintiffs to send a notice to those individuals so that they may decide whether to join this proposed collective action. Plaintiffs need this list in order to contact the potential opt in plaintiffs in the most expeditious manner possible and for potential opt-in plaintiffs to have sufficient time to be

notified of the present collective action and the opportunity to consider whether they would like to participate as party plaintiffs.

Furthermore, this Court should approve the attached "Notice of Collective Action Lawsuit" and authorize Plaintiffs to send it to the individuals on the lists provided by Defendant. A court "may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Because the attached notice fairly addresses the issues in this case and explains the procedures for opting into this action, this Court should approve it and authorize its delivery.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court find that there is a strong likelihood that Plaintiffs and the potential opt-in plaintiffs are substantially similar and facilitate notice of the lawsuit to potential opt-in plaintiffs by approving the "Notice of Collective Action Lawsuit" (attached hereto as Exhibit A), authorizing Plaintiffs to deliver it to the individuals on the list of potential opt-in plaintiffs, and requiring Defendant to provide to Plaintiffs within ten business days (1) the names of all individuals employed as servers, bartenders, or bussers by DAM Management LLC d/b/a Lanning's for any period of time since August 14, 2020 (2) their contact information, including last-known home addresses (including zip code), home and mobile telephone numbers, and e-mail addresses, and (3) their dates of employment. A Proposed Order is attached hereto as Exhibit B.

Respectfully submitted,
/s/ Christopher M. Sams
Stephan I. Voudris, Esq.
Supreme Court No. 0055795
Christopher M. Sams, Esq.
Supreme Court No. 0093713
Voudris Law LLC
8401 Chagrin Road, Suite 8
Chagrin Falls, OH 44023
svoudris@voudrislaw.com
csams@voudrislaw.com
440-543-0670
440-543-0721 (fax)
*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2024, a true and correct copy of this document was served by this Court's Electronic Filing System, which will serve notice upon counsel for Defendant.

/s/ Christopher M. Sams