IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK ROESEL, et al. | : | |
| | : | Case No. 5:23-CV-01584 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Judge John R. Adams |
| | : | |
| DAM MANAGEMENT, LLC, DBA LANNING'S | : | **ORDER** |
| | : | (Resolving Doc. 41). |
| Defendant. | | |

This matter is before the Court on Defendant DAM Management, LLC, DBA Lanning's Motion for Reconsideration of this Court's September 12, 2024 Memorandum of Opinion and Order (Doc. 41), denying Defendant's motion for summary judgment (Doc. 21) and granting Plaintiffs' partial motion for summary judgment (Doc. 20). The matter is fully briefed. Having reviewed the briefing, the Court hereby DENIES Defendant's motion for reconsideration.

I.  Procedural History

On August 14, 2023, Plaintiffs filed the instant Collective Action Complaint, asserting violations of Ohio's minimum wage laws and the Fair Labor Standards Act. Doc 1. On February 29, 2024, Plaintiffs filed their motion for partial summary judgment, asserting that they were entitled to judgment as a matter of law on their unpaid minimum wage claim, leaving the amount of damages as the only remaining genuine issue of material fact. Doc. 20.  On that same day, Defendant's filed its motion for summary judgment, asserting that Plaintiffs were paid above federal minimum wage at all times relevant to the lawsuit.  Doc. 20.  While those motions were pending, on April 8, 20204, Defendant's filed a motion pursuant to Rule 37(c)(2) to deem certain

admissions admitted and to pay defendants reasonable attorney fees incurred in proving the admissions were true (Doc. 27), and on August 21, 2024, a supplemental motion for summary judgment asserting res judicata required Plaintiff to have brought these claims as a counterclaim in a state court lawsuit (Doc. 36). On September 12, 2024, the Court denied Defendant's motion for summary judgment as well as its supplemental motion for summary judgment and granted Plaintiffs' partial motion for summary judgment. Doc. 39. The Court further denied Defendant's motion to deem certain admissions admitted. Doc. 39.

On October 8, 2024, Defendant filed its motion for reconsideration of the Court's Order. Doc. 41. On October 15, 2024, Defendant filed a "supplement" to its motion for reconsideration. Doc. 43. The Court struck this "supplement" explaining

> that On October 15, 2024, Defendant filed a 'supplement' to its motion for reconsideration, asserting an entirely new argument to justify the percentage of fees it retained from Plaintiffs' credit card tips. Doc. 43. Pursuant to Fed.R.Civ.P 59(e), Defendant had until October 10, 2024 to file its motion for reconsideration. Its initial filing was timely, however, its purported "supplement" raising a new argument not even mentioned in the summary judgment briefing, is not.

Doc. 44.

### A. Law and Analysis

A motion for reconsideration is extraordinary in nature because it disturbs the finality of judgment. *See Plaskon Electronic Materials, Inc. v. Allied-Signal, Inc.*, 904 F. Supp. 644, 669 (N.D. Ohio 1995). "Generally, there are three major situations which justify a court reconsidering one of its orders: '(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or to prevent manifest injustice.'" *Plaskon*, supra.

2

Courts should not reconsider prior decisions when the motion for reconsideration simply reiterates previous arguments or presents new arguments that could have been raised during the initial consideration of the issue. *Database America, Inc., v. Bellsouth Advertising & Pub. Corp.*, 825 F.Supp. 1216, 1220 (D.N.J.1993) (citing *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J.1990)). Motions for reconsideration are not substitutes for appeal. *Karr v. Castle*, 768 F.Supp. 1087, 1093 (D.Del.1991). "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *Database America, Inc.*, supra.

In its motion, Defendant asserts three bases for reconsideration; 1) that the Court misapplied the application of the tip credit, 2) that the Court misapplied the law of res judicata, and 3) that the Court did not address Defendant's statute of limitations argument regarding its FLSA claim. Doc. 41.

### 1. The Court's Tip-Credit Analysis is Correct

Defendant's contention that the Court misapplied the application of the tip-credit is based on its insistence of comparing dollar amounts rather than comparing percentages as required by law and that it could have withheld *more* from its employees to recoup the entire amount charged by the credit card company rather than limiting its withholding to the legally allowable amount that it was charged to convert the tip to cash.[1] The Court noted that the facts of this case are simple and not in dispute:

---

[1] The motion for reconsideration asserts the new argument that Defendant should be able to charge its employee any amount so long as it is less than the total amount charged by the credit card company. Because this specific

3

Plaintiff Hernandez was a server at Lanning's for approximately 27 years, until June of 2022. Doc. 21-3, p. 13, 9. Plaintiff Hernandez worked approximately 20-25 hours a week. Doc. 21-3, p. 19. Plaintiff Roesel was a server at Lanning's from September of 2019 to February of 2022. Doc. 21-4, p. 43.  Plaintiff Roesel worked approximately 24-30 hours a week. Doc. 21-4, p. 37-38. Plaintiffs were paid an hourly rate plus tips.  Doc. 21-4, p. 17; Doc. 21-3, p. 18.; Doc. 21-2, p. Defendant paid its servers $4.35 from December 2020-June of 2021, $4.40 from June of 2021 to November of 2021, and $6.00 from December of 2021-present.  Doc. 21-2, p. 15. Doc. 21-4, p. 32; Doc. 21-3, p. 18-19.

Defendant accepts credit card payments.  Doc. 21-2, p. 17. Credit card companies charge Defendant processing fees. Id. Each time a customer uses a credit card to pay their bill, Defendant is charged fees as follows:

- MasterCard: $.15 per authorization item; 2.38% gross amount;
- Visa: $.15 per authorization item; 2.33% gross amount;
- American Express: $.15 per authorization item; 3.5% of gross amount; and
- Discovery - $.15 per authorization item; 2.41% of gross amount.

Doc. 21-2, Ex. 4, p. 11.

To recoup some of these fees, Defendant withheld five percent of tips that its customers paid their servers via credit card.  Doc. 21-2, 28-31; Doc. 21-3, p. 18; Doc. 21-4, p. 34. Defendant did not withhold any fees from cash tips. Doc. 21-4, p. 18-19; Doc. 21-3, p. 20.

---

argument was not made previously, the Court focused on the argument that Defendant was permitted to take the 5% from the TIPPED portion so long as it showed that in the aggregate that it withheld no more than its total expenditures related to the credit card tip collection. As the Court noted, Defendant made no effort to make this showing.  Doc. 39, p. 9. The argument here seems to be that because it could be charging its employees a substantially higher amount but is not, it fulfilled the burden the Court previously said they did not meet.  This is based upon a misreading of FLSA, wherein Defendant assumes it can charge its employees the ENTIRE amount of the credit card fee.  This reading is incorrect.

4

Defendant does not suggest in the present motion that the Court misstated any of these facts. In concluding that Defendant is not entitled to invoke the tip credit on the facts of this case, the Court explained that Defendant withheld *too much* from its employees. The Court explained that:

> In a situation where a customer pays a tip with a credit card, and the credit card company assesses a service charge to process the tip, the FLSA allows employers to deduct any funds required to "convert" a credit card tip into a "cash tip" "so long as the recoupment reasonably approximates the cost of collecting the credit card tips." *Landry's, Inc*., at *1-2 (citing *Myers,* 192 F.3d at 553-554).
>
> …
>
> [T]here is no dispute that Defendant is withholding a higher percentage than it is being charged. Defendant contends that 5% "is reasonable and is a reasonable approximation of the processing fee charged to Defendant." Doc. 22 p. 14. The Department of Labor "has long construed the FLSA to permit the employer's reduction of an employee's charged tip by the amount of a service toll associated with settlement of that debited perquisite." *Myers,* 192 F.3d at 553-554. By way of illustration, the Department of Labor explains the following in its official field manual:
>> Where tips are charged on credit cards, WH [the Wage and Hour Division] will not question the reduction of the credit card tips paid over to the employee if the amount deducted is no greater than the percentage charged by the credit card company. For example, where a credit card company charges an employer 5 percent on all sales charged to its credit service, the employer may pay the employee 95 percent of the tips without violating FLSA.
>
> *Myers,* 192 F.3d at 553-554 (quoting U.S. Dept. of Labor Field Operations Handbook § 30d05(a) (Dec. 9, 1988)).

Defendant mistakenly insists that regulations allow it to take a fixed sum deduction so long as that amount is less than a certain percentage of its *entire sale*. However, the law very clearly explains that Defendant can only deduct the amount that it costs to convert the credit card tip into cash. Defendant repeatedly insists that it is within its legal right to charge its employees

5

a fee up to the dollar amount that the credit card companies charged it for the entire bill. Defendant ignores percentages and insists that if the dollar amount it withheld is less than the dollar amount it was charged, then it is in compliance. By way of illustration, Defendant sets forth the following hypothetical chart[2]:

| Bill Amount | Tip | Total Transaction | Total Credit Charge Fee Charge to Defendant [2.33%] | 5% Deduction from Tip |
|---|---|---|---|---|
| $50 | 20% ($10) | $70 [$60] | $1.[40] | $.50 |
| $100 | 20% ($20) | $120 | $2.79 | $1.00 |
| $150 | 20% ($30) | $180 | $4.19 | $1.50 |

Defendant points to this chart and concludes that "Based on a twenty percent tip schedule, it is obvious that Defendant was still paying out more than double the credit card tip deduction." Doc. 41, p. 6. Thus, Defendant urges a legal conclusion that it is entitled to charge its employees up to $1.40 on a 20% tip of a $50 meal.

The Court has taken the liberty to complete this otherwise misleading chart to include a column illustrating the percentages that Defendant urges this Court to consider valid under the tip-credit deduction, and a column setting forth what the regulations allow Defendant to deduct (in this example, 2.33%)

---

[2] Defendant asserts that this chart is based on the lowest credit card fee of 2.33%. However, some of Defendant's math is incorrect. 20% of $50 is $10. $50 plus a $10 tip totals $60, not $70 as stated in Defendant's chart. If the total bill is $60 including tip, 2.33% is $1.40, not $1.38 as stated in the chart. The Court has inserted the correct numbers in brackets for illustrative purposes.

| Bill Amount | Tip | Total Transaction | Total Credit Charge Fee Charge to Defendant [2.33%] | *[Percentage Defendant contends it is legally entitled to withhold from the tip]* | 5% Deduction from Tip | *[2.33% Deduction from Tip]* |
|---|---|---|---|---|---|---|
| $50 | 20% ($10) | $[60] | $1.[40] | *14% ($1.40 out of $10 tip)* | $.50 | *$0.23 (2.33% out of $10 tip)* |
| $100 | 20% ($20) | $120 | $2.79 | *13.95% ($2.79 out of $20 tip)* | $1.00 | *$0.47 (2.33% out of $20 tip)* |
| $150 | 20% ($30) | $180 | $4.19 | *13.97% ($4.19 out of $30 tip)* | $1.50 | *$0.70 (2.33 out of $30 tip)* |

Following Defendant's argument through, it contends that it is entitled to charge its employee 14% of the credit card tipped amount. On a $10 tip, Defendant asserts it could charge its employee up to $1.40 because that is the total amount it is charged on the $60 credit card charge. Under this argument, the employee would pay the entire credit card fee and Defendant would pay nothing. Because it "only" charges its employee $.50, Defendant asserts that it is in compliance. The Court cannot be persuaded that such an erroneous reading of the law and regulations is correct.[3] To do so would be to enrich the employer at the cost of the employee. This Court declines to do so. 2.33% of the tipped portion is $.23. Defendant is overcharging its employee by $.27.

---

[3] Defendant asserts that the "best evidence" that they were not violating the tip credit deduction is that Plaintiffs did not complain to them directly. Doc. 41, p. 6. It is unclear how Defendant believes this supports its argument. Following the thread of this argument, Defendant apparently contends that the burden was on the Plaintiffs to ensure it followed the law. A non-lawyer's view of the legality of Defendant's action has no relevance to the Court's analysis.

7

Defendant's motion to reconsider this issue is denied.

### 2. Plaintiffs' Claims are Not Barred By Res Judicata

Defendant supplemented its motion for summary judgment to assert that Plaintiffs' claims were barred by res judicata because they were required to bring the claims as a counter-claim in the state court litigation. To this issue, the Court concluded:

> Defendant DAM Management brough a defamation action against Plaintiff Hernandez in Summit County Court. *DAM Management, LLC v. Hernandez*, CV-2022-07-2240. In its supplemental motion for summary judgment herein, Doc. 36, Defendant asserts that "the law of res judicata and Ohio Civ. R. 13(A) required Plaintiff Hernandez to assert the claims in this lawsuit as a counterclaim in the Summit County lawsuit." Doc. 36, p. 2. The Court notes that the state court action was filed in July of 2022. The federal action was brought in August of 2023. The parties have conducted discovery, briefed dispositive motions, and expended time and money litigating the case. Defendant filed its supplementary motion four months after dispositive motion briefing was complete. Defendant declined to raise an abstention argument in a timely manner such that this Court could have conserved judicial and financial resources, instead waiting until the time to appeal the state court case had run and significant time and effort had been expended by the parties and the Court. Substantively, the Court concludes that Plaintiff's FLSA and Ohio minimum wage claims were not compulsory counterclaims in Defendant's defamation action against Hernandez. The state court case involved actions of one former employee after his employment ended. The Federal case involves Defendant's conduct as an employer, is a potential collective action, and includes Plaintiff Roesel, who was in no way related to the state court case. Accordingly, the motion is denied.

Doc. 41, fn 1. Defendant makes no argument to justify reconsideration of this conclusion. Defendant makes much of the Court's statement about judicial resources. However, that is not the substantive reason the Court gave to deny the motion. The Court made this clear by explaining that it "noted" the delay in the argument and then explaining that "Substantively, the court concludes that Plaintiff's FLSA and Ohio minimum wage claims were not compulsory

counterclaims in Defendant's defamation action against Hernandez." Doc. 41, fn. 1. The Court then listed those reasons.

Defendant merely recites, almost word for word, the arguments it made in its initial motion. The Court will not reconsider an issue simply because the party does not like the answer. *Database America, Inc.*, supra.

### 3. Statute of Limitations

Defendant contends that the Court erred "when it failed to address Defendant's argument that Plaintiffs' FLSA claim was untimely." Doc. 41, p. 15. The statute of limitations for an FLSA claim is three years for a willful violation and two years for a non-willful violation. 29 U.S.C. § 255(a). Ohio's minimum wage requirements have a three-year statute of limitations and do not require a showing of willfulness. *See* Ohio Const. Article II, § 34a ("An action for equitable and monetary relief may be brought against an employer . . . for any violation of this section . . . within three years of the violation . . . . ). Defendant asserts that there is no evidence in the record that it acted willfully, and therefore Plaintiffs' FLSA claims fail.

First, the Court notes that on August 14, 2023, Plaintiffs filed their complaint asserting that Defendant failed to pay at least the tipped employee minimum wage and that Defendant unlawfully withheld a portion of Plaintiffs' tips. Doc. 1. Plaintiff Roesel was a server at Lanning's from September of 2019 to February of 2022. Doc. 21-3, p. 13, 9. Plaintiff Hernandez was a server at Lanning's until June of 2022. Doc. 21-4, p. 43. Thus, Plaintiffs' complaint was filed less than two years after their employment ended and is timely.

The Court concluded that Defendant impermissibly withheld its employees' tips and therefore was not entitled to the "tip credit" for purposes of minimum wage. Accordingly,

Defendant was required to pay its employees minimum wage[4]. It is undisputed that Defendant paid its employees $4.35 from December 2020 to June of 2021, $4.40 from June of 2021 to November of 2021, and $6.00 from December of 2021-present. This is well under minimum wage per the Ohio Act ($8.70 in 2020; $8.80 in 2021; $9.30 in 2022; $10.10 in 2023; $10.45 in 2024) and the FLSA[5].

To the extent that Defendant seeks to parse specific time frames from the Complaint to establish its claim that the entire Complaint is untimely, this argument fails. Defendant admits that between December 2020 and June 2021 it failed to pay its employees even the minimum wage for tipped employees. It continues to justify this failure by claiming that it was under new ownership and the new owners were "unaware" of the minimum wage increase that took effect in January of 2021. Because the Court concluded that Defendant was not entitled to the tip credit at all, whether Defendant willfully failed to pay paid the tipped employee minimum wage for this period of time, is not relevant. However, because Defendant continues to assert this flawed argument, the Court will make it clear that under the admitted facts there is no reasonable argument that this failure was anything other than willful. The professed ignorance of new ownership is not a defense to paying the legally required minimum wage.

---

[4] It appears that Defendant seeks to include Plaintiffs' tips in its calculations to establish that the employees *received* more than minimum wage. Because the Court concluded that Defendant was not entitled to the tip credit, *DEFENDANT* was required to pay its employees minimum wage. It cannot rely on the fact that its *customers* paid its employees to justify its violation of the law.

[5] FLSA minimum wage at all relevant times was $7.25. 29 U.S.C. § 206(a)(1)(C).

Accordingly, for the reasons stated above, Defendants' Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

**Dated:** January 23, 2025                                        *s/Judge John R. Adams*
John R. Adams
United States District Judge